**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JOHNATHAN JOHNSON,

          Plaintiff,

   -v.-               9:14-CV-743
                      (MAD/ATB)
LORI POUPORE, et al.,

          Defendants.

JOHNATHAN JOHNSON, Plaintiff Pro Se
RYAN L. BELKA, Asst. Attorney General for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT and RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable Mae A. D'Agostino, United States District Judge. In this civil rights complaint, plaintiff alleges that defendants violated his First Amendment rights when they confiscated his gold cross and chain and when they would not let him "designate" his religion as both Nation of Islam ("NOI") and Roman Catholic. Plaintiff's complaint also raised some due process claims that he has now withdrawn.[1] (Dkt. No. 22) (Dec. 4, 2014 Text Order accepting plaintiff's agreement to withdraw his Federal and State Law Due Process claims).

Presently before this court is the remaining defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 34). Plaintiff has responded in

---

[1] In addition, defendants Collyer, Woodward, Uhler, Boll, McKoy, Haponik, Koenigsmann, and Bellamy were terminated from this action. (Dkt. No. 22). Plaintiff subsequently attempted to rescind his agreement, and on April 28, 2015, Judge D'Agostino found that plaintiff failed to state any due process claims relating to the confiscation of the gold chain and cross, and dismissed the due process claims sua sponte under 28 U.S.C. § 1915A(b). (Dkt. No. 39). Thus, plaintiff's request for review of my December 4, 2014 Order was "denied as moot." (Dkt. No. 39 at 7-8).

opposition to the motion. (Dkt. No. 36). For the following reasons, this court agrees with defendants and will recommend dismissal of the complaint.[2]

I. **<u>Summary Judgment</u>**

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. Fed. R. Civ. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id*. However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

In meeting its burden, the party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying the portions of "'the pleadings, depositions, answers to interrogatories, and admissions on

---

[2] The court notes that plaintiff has recently filed a motion to "vacate" Judge D'Agostino's order denying plaintiff's motion for a preliminary injunction. (Dkt. No. 43). Defendants have responded in opposition to the motion. (Dkt. No. 45). Judge D'Agostino originally denied plaintiff's motion for a preliminary injunction on December 11, 2014. (Dkt. No. 23). Plaintiff moved for "reconsideration" of that order, defendants responded, and plaintiff replied. (Dkt. Nos. 24, 27, 32). Judge D'Agostino denied the motion for reconsideration on April 28, 2015. (Dkt. No. 39). Plaintiff filed an "interlocutory appeal," and although the Second Circuit Court of Appeals initially granted in forma pauperis ("IFP") status, it was later revoked because plaintiff is barred from proceeding IFP under 28 U.S.C. § 1915(g). *See Johnson v. Poupore*, No. 15-1533 (2d Cir. Aug. 15, 2015) (order granting IFP); *Johnson v. Poupore*, No. 15-1533 (2d Cir. Oct. 20, 2015) (order vacating IFP and denying plaintiff's motion for appointment of counsel). As stated above, plaintiff has now moved to "vacate" Judge D'Agostino's order denying his motion for a preliminary injunction. (Dkt. No. 43). The resolution of that motion will not affect this court's decision.

file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-movant bears the burden of proof at trial, the moving party may show that he is entitled to summary judgment by either (1) pointing to evidence that negates the non-movant's claims or (2) identifying those portions of the non-movant's evidence that demonstrate the absence of a genuine issue of material fact. *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006) (citing *Celotex Corp.*, 477 U.S. at 23). The second method requires identifying evidentiary insufficiency, not merely denying the opponent's pleadings. *Id*.

If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id*. A dispute about a genuine issue of material fact exists if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Additionally, while a court "'is not required to consider what the parties fail to point out,'" the court may in its discretion opt to conduct "an assiduous view of the record" even where a party fails to respond to the moving party's statement of material facts. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted).

**II.    Facts**

The facts in this action, which was removed by defendants to the Northern

3

District of New York from the Franklin County Supreme Court, were outlined in Judge D'Agostino's decision denying plaintiff's motion for a preliminary injunction (Dkt. No. 23) and will be recited herein for clarity and continuity. In his complaint, plaintiff states that he is a Roman Catholic and a Muslim. (Complaint ("Compl.") at 2-15). In 2005, plaintiff designated his religion with the Department of Corrections and Community Supervision ("DOCCS") as Nation of Islam ("NOI"). *Id.* Plaintiff alleges that in February of 2009, he was issued a "Jewelry Permit" for a "gold cross and gold chain."[3] (Compl. at 7-8, Dkt. No. 4-1 at 17, 26 & Pl.'s Ex. H, Dkt. No 36 at 1-2).

In September of 2013, plaintiff placed his gold chain and cross in his "personal property" in preparation for a court trip. (Compl. at 3-4). However, when he returned to Upstate, the cross and chain were not returned to him. In response to his grievances and complaints, plaintiff was told that the gold chain and cross would not be returned to him because the rules governing his designated religion – NOI – did not include this item as an authorized religious medallion. (*Id.* at 4-5). Plaintiff was advised by the Central Office Review Committee ("CORC") that DOCCS Directive No. 4202 required that a religious medallion be "consistent with the inmate's documented religion, and it is noted that the grievant is registered as Nation of Islam." (Pl's Ex. C, Dkt. No. 36-3 at 11). Plaintiff was also told that the chain and cross would not be returned because the

---

[3] Plaintiff was charged with possessing "Unauthorized Jewelry" in February of 2009, but the charge was dismissed after a disciplinary hearing. (Dkt. No. 4-1 at 26-27). Plaintiff was subsequently issued the "Jewelry Permit" on February 27, 2009. (Pl.'s Ex. H).

4

chain was broken and was considered "altered."[4] (Compl. at 4-5).

In this complaint, as the result of being told that an NOI inmate could not have a gold chain and cross, plaintiff alleges that in October of 2013, he requested that his records be changed to reflect that he was "both" NOI and Roman Catholic. (Compl. at 7). Plaintiff reasoned that if he registered for both religions, he could get his chain and cross back. In response to another grievance filed by plaintiff, the Inmate Grievance Resolution Committee ("IGRC") advised plaintiff that Directive No. 4402 did not provide for an inmate to be registered as a member of two religions. (*Id.* at 8, Dkt. No. 4-1 at 1-2). The denial of this grievance was affirmed by the Upstate Superintendent on December 24, 2013. (Dkt. No. 4-1 at 13).

Plaintiff claims that Directive No. 4402 is unconstitutional insofar as it bars him from designating more than one religion. (Compl. at 10). He also claims that defendants' withholding of his gold chain and cross violates his First Amendment right to the free exercise of his religion(s). (*Id.*) Plaintiff seeks monetary and injunctive relief.

On November 4, 2014, plaintiff was deposed in this action, and defendants have filed excerpts of plaintiff's deposition in support of their summary judgment motion. (Dkt. No. 34-5; Belka Decl. Ex. A ("Dep.")). Defendants have also filed the declarations of defendant Cheryl Morris, the DOCCS Director of Ministerial, Family, and Volunteer Services and of Don Venettozzi, the DOCCS Assistant Director of the

---

[4] Inmate Disciplinary Rule 113.11 states that: "An inmate shall not possess any authorized item that has been altered in any manner so as to change its original intent and/or purpose." 7 N.Y.C.R.R. § 270.2.

Special Housing Unit ("SHU"). (Morris Decl., Dkt. No. 34-3; Venettozzi Decl., Dkt. No. 34-4). The court will cite to the specifics of the defendants' declarations and exhibits as necessary in its analysis of the summary judgment motion.

### III. First Amendment

#### A. Legal Standards

Inmates have the right under the First and Fourteenth Amendments to freely exercise a chosen religion. *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). However this right is not limitless, and may be subject to restrictions relating to legitimate penological concerns. *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990). The analysis of a free exercise claim is governed by the framework set forth in *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987) and *Turner v. Safely*, 482 U.S. 78, 84 (1987). This framework is one of reasonableness and is less restrictive than the standard ordinarily applied to the alleged infringements of fundamental constitutional rights. *Ford*, 352 F.3d at 588.

In *O'Lone*, the Supreme Court held that a regulation that burdens a protected right withstands a constitutional challenge if that regulation is reasonably related to legitimate penological interests. 482 U.S. at 349 (quoting *Turner*, 482 U.S. at 89). An individualized decision to deny an inmate the ability to engage in a religious exercise is analyzed under the same standard. *Salahuddin v. Goord*, 467 F.3d 263, 274 n.4 (2d Cir. 2006) (citations omitted). In *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988), the Second Circuit held that to assess a free exercise claim, the court must determine "(1) whether the practice asserted is religious in the person's scheme of beliefs and whether

6

the belief is sincerely held; (2) whether the challenged practice of prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers some legitimate penological interest."

The Second Circuit has examined the standard for analyzing a First Amendment religion claim. *Holland v. Goord*, 758 F.3d 215, 220-23 (2d Cir. 2014). In *Holland*, the court discussed the degree of burden required for a First Amendment claim. *Id.* at 220-21. The Second Circuit has not decided whether, to state a claim under the First Amendment, the inmate must show at the onset that the disputed conduct "substantially burdens his sincerely held religious beliefs." *Id.* at 220 (citing *Salahuddin, supra* at 274-75; *Ford*, *supra* at 592 (where the court assumed without deciding that the substantial burden test applies)). While the court in *Holland* did not decide the issue, it assumed the continued validity of the substantial burden test and analyzed the case accordingly.[5] *Id.* at 221. This court will follow the analysis in *Holland* and will consider the First Amendment claim, assuming that the substantial burden test is still valid.

Once a substantial burden is found, the court must examine whether the challenged action has a legitimate, rational connection to the governmental objective; whether prisoners have alternative means of exercising the burdened right; the impact on guards, inmates, and prison resources of accommodating that right; and the existence of alternative means of facilitating the exercise of that right that have only a

---

[5] This finding was supported by the fact that the court's "precedent squarely dictat[ed] that Holland's religious exercise was unconstitutionally burdened," a point that the defendants in that case did not challenge on appeal. *Holland*, 758 F.3d at 221.

7

*de minimis* adverse effect on the valid penological interests. *See King v. Bennett*, No. 02-CV-349, 2007 WL 1017102, at *4 (W.D.N.Y. March 30, 2007) (citing *Salahuddin*, 467 F.3d at 274). Finally, once prison officials state a legitimate penological interest to justify their actions, the burden shifts to plaintiff to show that the defendants' concerns are "irrational." *Ford*, 352 F.3d at 595. "Given the difficult judgments attendant to prison operation," a generally applicable policy, even if that policy burdens an inmate's freedom to exercise his religion, will not rise to the level of a constitutional violation if that policy is "reasonably related to legitimate penological interests." *Holland*, 758 F.3d at 222.

### B.    Application

Judge D'Agostino denied plaintiff's motion for a preliminary injunction, in part, because plaintiff failed to show that the denial of the gold chain and cross substantially burdened his religious exercise. (Dkt. No. 23 at 16) (citing inter alia *Ballou v. Fuller*, No. 9:12-1595, 2013 WL 1316020, at *13-15 (D.S.C. Mar. 4, 2013 ) (granting summary judgment and finding no evidence that denial of a necklace with a cross pendent burdened plaintiff's religious exercise). Now that plaintiff has been deposed, this court continues to agree that plaintiff has not shown a substantial burden on his "sincerely held" religious beliefs, and therefore, cannot meet the first requirement of the First Amendment analysis.

The law is clear that the fact that plaintiff has designated one religion does not prevent him from claiming that he also follows the tenets of another religion, as long as plaintiff's beliefs are "sincerely held." *Barnes v. Furman*, No. 14-581, __ F. App'x __,

2015 WL 6216534, at *4 (2d Cir. Oct. 22, 2015) (discussing the issue in terms of qualified immunity). In *Barnes*, the plaintiff's designated religion was Jewish, but plaintiff wished to wear a Tsalot-Kob, which was only authorized for members of the Rastafarian faith. *Id.* at *3. The court stated that "the test for whether a prisoner's beliefs are entitled to free exercise protection turns on whether they are 'sincerely held,' not the ecclesiastical question of the propriety of Jews wearing head coverings other than yarmulkes." *Id.* at *4.

Plaintiff has never stated that wearing a cross is essential to *his* exercise of the NOI religion. Rather, he alleges that DOCCS's policy prohibiting him from choosing to designate two religions is unconstitutional. During his deposition, plaintiff stated that the defendants were violating his constitutional rights "by telling [him] that [he] can't be a Muslim and Roman Catholic." (Pl.'s Dep. at 93). Plaintiff then states that

> A. Well, first of all, I didn't have anything designated as a religion. The only reason why [sic] I put Muslim down there was to get the – to participate in their feasts. In order to – my family been [sic] Muslims since the '60s. My mother been [sic] Roman Catholic since I was born in 1959.
> Now, in order to participate in certain activities in certain religions, you have to put that down on paper so the Department of Correction can honor that.
> Q. Okay, And so you put it down in 2005, so you could celebrate the Muslim feasts?
> A. Exactly.
> Q. The high holy days?
> A. Exactly.
> Q. Okay. And so from 2005 on, were you allowed to celebrate the high holy days – participate in the feasts?
> A. Yes, I was *when I chose to.*

9

(Pl.'s Dep. at 104) (emphasis added).  Later, plaintiff was asked if, as part of the NOI faith, he was required to wear a star or moon, and plaintiff responded: "I could if I chose to." (Pl.'s Dep. at 116).  He also stated that he prayed "to all the gods," including the Roman Catholic god. (Pl.'s Dep. at 125).  Plaintiff stated that he "[kept] the cross because [Jesus] was crucified on the cross.  That's why we wear the cross . . . to signify his crucifixion." (*Id.*)  Plaintiff was also asked if he wanted to observe any high holy days, associated with the Roman Catholic faith.  Plaintiff responded that he had his own "holy" day, and he stated that he had a "whole philosophy" about holy days.  Plaintiff testified that his holy day was "called ass-kicking day. . . . That's my holy day." (Pl.'s Dep. at 138).

Plaintiff also stated that he knew that he could change his religious designation if he wished, but plaintiff stated that "I'm not going to do that to satisfy them . . . in order to get my cross and chain back." (Pl.'s Dep. at 142).  Finally, plaintiff was asked about the "alteration" of the chain.  Plaintiff believed that "they" altered the chain, and that the chain was not originally "altered" or broken, because he would have been disciplined for it. (Pl.'s Dep. at 142, 145).

Courts generally do not question the centrality of particular beliefs or practices to a faith, or the validity of a litigant's interpretation of those creeds. *Amaker v. Goord*, No. 06-CV-490A, 2010 WL 2595286, at *11 (W.D.N.Y. Mar. 25, 2010).  The Supreme Court has rejected the notion that to claim the protection of the free exercise clause, the plaintiff must be "responding to the commands of a particular religious organization." *Frazee v. Ill. Dep't of Employment Sec.*, 489 U.S. 829, 834 (1989).  Courts may,

10

however, consider whether an inmate sincerely holds a particular believe and whether the belief is religious in nature. *Id.* (citing *Ford*, 352 F.3d at 590).

In this case, however, plaintiff's deposition shows that he is anything but sincere. In fact, he testified that the only reason he registered as NOI in 2005 was to participate in their feasts. He flippantly stated that his holy days were known to him as "ass kicking days," and that he really just wanted his property back because he had worn that cross and chain for many years. Although, the court understands that plaintiff wants his chain and cross back, it appears to be more of a property issue than a religious issue.[6] (Pl.'s Dep. at 85, 93). He insisted that he did not wish to change his religious designation because he did not want to do it "for them." Plaintiff never stated that wearing his cross and chain was part of his "religious practice," and as stated above, he became sarcastic when defense counsel asked about these practices.

Directive 4202 only implies that an inmate may only designate one religion at a time, and the court finds that this requirement is reasonable. There is no specific statement in the directive, stating that an inmate is limited to listing only one religioun. The requirement that inmates register their religious affiliation with prison officials and prison officials reliance on the designation to some extent, is a legitimate penological interest. Without an official designation, it would be impossible to administer the many religious affiliations in DOCCS. *See Barnes v. Furman*, 2015 WL 6216534 at *4

---

[6] Plaintiff states that "[t]he issue is that they took my chain . . . they had no business taking my chain and cross. . . . All I want is my chain back . . . my chain and my cross." (Pl.'s Dep. at 85). "It's the same cross and chain that's been [sic] around my neck for twenty-something years." (Pl.'s Dep. at 137).

11

(referring to the registration requirement as a legitimate penological objective). Plaintiff simply wishes to register for two religions, so that he can have his chain and cross, while still being able to participate in the NOI activities and feasts. There is apparently no other reason that plaintiff has stated to add the Roman Catholic designation. Again, plaintiff has failed to show that he is sincere in his dual religion request.[7] It is clear from his deposition that plaintiff does what he has to do in order to obtain the benefits that he desires - feasts for the Muslim religion and his cross and chain for the Roman Catholic religion.

This case is distinguishable from cases in which NOI inmates were not allowed to wear dreadlocks because only inmates who identified as Rastafarian were allowed to wear dreadlocks. The plaintiffs in those cases sincerely believed that their designated religion required them to wear dreadlocks. *See Amaker v. Goord*, 2010 WL 2595286, at *9; *Pilgrim v. Artus*, No. 9:07-CV-1001, 2010 WL 3724883, at *10 (N.D.N.Y. Mar. 8, 2010), *adopted in* 2010 WL 3724881 (N.Y.N.D. Sept. 17, 2010).[8]

As stated above, in *Barnes v. Furman*, a Jewish inmate wished to wear a Tsalot-Kob, which at the time was only authorized for Rastafarian inmates. 2015 WL 6216534, at *3. Plaintiff's Tsalot-Kob was confiscated because the only authorized head covering for a Jewish inmate was a yarmulke, based on advice from DOCCS

---

[7] Plaintiff's opposition papers make it clear that his request is that he be allowed to register as both Roman Catholic and Muslim. (Dkt. No. 36 at 1) ("refusing to allow Johnson rights to being a Roman Catholic and Nation of Islam [Muslim] And to wear a religious "cross and gold chain." (*Id.*)

[8] The plaintiffs in *Amaker* and *Pilgrim* also had claims under the Religious Land Use and Institutionalized Persons Act ("RLIUPA"), 42 U.S.C. § 2000cc-1 et seq. Plaintiff in this case does not have a RLUIPA claim, but this does not affect the court's decision.

"religious advisors, the New York State Board of Rabbis." *Id.* In *Barnes*, the court did not discuss or question the plaintiff's sincerity. The defendants in *Barnes* did not dispute that their conduct was unlawful, but asserted qualified immunity[9] as a defense, arguing that a reasonable official would not have understood his conduct to be illegal. *Id.* In *Barnes*, the court held that defendants could not prohibit a "sincere" religious practice without some legitimate penological interest. *Id.* at *4. Because defendants in *Barnes* offered no legitimate penological interest, the court held that a question of fact remained that could not be resolved on summary judgment. *Id.* at *4-5. The court remanded the case for further development of the record. *Id.* at *5.

Although plaintiff Johnson argues in his response to defendants' motion for

---

[9] Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In evaluating whether a right was clearly established at the time the defendant acted, the court must determine: "(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and, (3) whether under pre-existing law a reasonable official would have understood that his or her acts were unlawful." *African Trade & Information Center, Inc., v. Abromaitis*, 294 F.3d 355, 360 (2d Cir. 2002) (citations omitted). Even if the constitutional privileges were clearly established, a government actor may still be shielded by qualified immunity "if it was objectively reasonable for the official to believe that his acts did not violate those rights." *Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir. 1991). Arguably, qualified immunity would also support a grant of summary judgment in this case because, although it was well settled that officials could not turn down an inmate's request for a particular religious hair cut, head covering, or religious object, simply because the plaintiff's designated religion did not require the conduct or material, in this case, plaintiff wished to designate two religions. There are no cases dealing with a dual designation, and a reasonable official would have not understood that prohibiting plaintiff from designating himself as both Roman Catholic and Muslim was in violation of his well-established constitutional rights. In addition, in this case, any claims for injunctive relief are now moot. DOCCS Directive 4202 has been amended to remove the requirement that the inmate's use of, or request for, any particular "religious article shall be consistent with his or her documented religion." *Compare* Morris Decl. ¶ 2, DOCCS Directive No. 4202(N)(2) (2008) *with* DOCCS Directive 4202(XII) & (XIV)(A) (2015) (Section XII is entitled "Religious Materials," cites RLUIPA, and states that DOCCS will provide a list of approved religious items that inmates may possess regardless of their designated faith group.")

summary judgment that he sincerely is both Roman Catholic and Muslim, his deposition belies these statements. No reasonable fact-finder could conclude from plaintiff's testimony that his beliefs are "sincere" for purposes of the "substantial burden" test. *See Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005) ("While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether 'the jury could reasonably find for the plaintiff,' . . . and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account.")). Plaintiff's First Amendment[10] claim may be dismissed.[11]

---

[10] Plaintiff also appears to argue that because he was given a "jewelry permit" in 2009 for the gold chain and cross, defendants cannot now deny him permission to wear and possess the pendant. (Dkt. No. 36 at 1). The court notes that the jewelry permit attached to plaintiff's papers specifically states that it is subject to rejection or modification. (Dkt. No. 36-3 at 2, Pl.'s Ex. H). The permit also states that if the item breaks or is altered, plaintiff may no longer possess it and must take the item to the "Package Room" to be mailed or destroyed. (*Id.*) It also appears from plaintiff's response that the argument regarding the jewelry permit is related to due process. The deprivation of property, whether intentional or unintentional is not actionable under section 1983 as long as the state provides an adequate post deprivation procedure. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). New York provides an adequate post-deprivation remedy in the Court of Claims with respect to property claims by prison inmates. *See Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996); *Love v. Coughlin*, 714 F.2d 207, 209 (2d Cir. 1983); see also N.Y. Ct. Cl. Act § 10(6).

[11] The court notes that in the preliminary injunction papers in this action, the defendants alleged that the plaintiff's chain was broken, and that was another reason that his chain and cross could not be returned to him. (Dkt. No. 23 at 2). While plaintiff disagreed with this statement (defendants submitted photographs of the chain and cross, showing that the clasp was broken), and the court found that plaintiff had not shown a likelihood of success on the merits, sufficient to obtain mandatory injunctive relief, the condition of the chain was a substantial issue in the argument. Although defendants have not made the argument in their summary judgment motion, an alternative basis for withholding plaintiff's property is its broken condition, which is a reason unrelated to religion. As stated above, the jewelry permit that plaintiff possesses from 2009 specifically states that if the jewelry is broken, it must be

14

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 34) be **GRANTED** and the complaint **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: December 16, 2015

*[signature]*
Hon. Andrew T. Baxter
U.S. Magistrate Judge

---

mailed out of the facility or destroyed.